IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELISSA M. ARREY

    Plaintiff,

v.                                                          CIV. 10-1139 GBW/CG

DOMENICA RUSH, in her official
capacity as CEO of Sierra Vista Hospital,
SIERRA VISTA HOSPITAL, a New Mexico
Corporation, and RONALD NESTLE, in his
Individual and official capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Rush and Sierra Vista Hospital's Motion for Summary Judgment. *Doc. 90.* The Motion is fully briefed and the Court is fully advised. *Docs. 91, 104, 115, 117, 119, 120.* Defendants' Motion will be granted in part and denied in part.

*Factual Background*

Plaintiff, Melissa Arrey, participated in a drug court program run by the Seventh Judicial District of the New Mexico state court system. *See doc. 91 at 2.* The program required Plaintiff to undergo drug screenings and participate in counseling sessions. *See id.* at 2-3. Through the program, Plaintiff met Defendant Ronald Nestle, a Licensed Alcohol and Drug Counselor, then employed by the Seventh Judicial District Drug Court. *Id.* at 2. The drug court had the power to imprison Plaintiff if she failed the drug

tests or did not meet the requirements of the course. *See, e.g., doc. 9* at 9 ("Nestle held the keys to Plaintiff's freedom").

Around September of 2008, Plaintiff and Defendant Nestle engaged in intimate activity. *See doc. 1* ¶¶ 10-116. The parties dispute both the extent of that activity and whether Plaintiff consented to it. *Compare doc. 91* at 3-4 *with doc. 104* at 2. The parties agree that Plaintiff and Defendant Nestle kissed and that Defendant Nestle crossed beyond the boundaries required of him as a counselor. *See id.*

On December 16, 2008, Plaintiff informed her probation officer that Defendant Nestle was "sending her sexually explicit and graphic text messages." *Doc. 1* ¶ 10. Plaintiff also alleged that Defendant Nestle had subjected her to unwanted sexual contact. *Id.* ¶ 16. Defendant Nestle was eventually arrested and charged with various crimes. *Doc. 91* at 1. Defendant Nestle subsequently admitted certain criminal conduct as a part of a pre-prosecution diversion agreement. *Doc. 104* at 6.

*Claims*

Plaintiff has sued three individuals/entities: Nestle; Sierra Vista Hospital ("SVH"), Nestle's employer and the operator of the drug court counseling program; and Domenica Rush, the Chief Executive Officer of Sierra Vista Hospital.

Count 1 of Plaintiff's Complaint is brought against all three defendants under Title 42 § 1983 claiming violations of her right under the Fourteenth Amendment to the

Constitution "to be secure in her bodily integrity and free from sexual harassment []." *Doc. 1* at 5-7.

Count 2 is brought against Defendant Rush under Title 42 § 1983 claiming violations of Plaintiff's rights under the Fourteenth Amendment.  *Id*. at 7-8.  Count 2 alleges that Defendant Rush's failure to properly train and supervise Defendant Nestle was a policy showing deliberate indifference to violations of Plaintiff's constitutional rights.

Count 3 is brought against Defendant Nestle under Title 42 § 1983 claiming violations of Plaintiff's liberty interest under the Fourteenth Amendment in being "free from sexual abuse and harassment."  *Id*. at 8-9.

Count 4 is brought against Defendant Nestle and Defendant SVH alleging that Defendant Nestle violated state law by falsely imprisoning Plaintiff.  *Id*. at 9-10.  It alleges that Defendant SVH is vicariously liable for Defendant Nestle's actions.  *Id*.

Count 5 is brought against Defendant Nestle and Defendant SVH alleging that Defendant Nestle violated state law by assaulting and battering Plaintiff.  *Id*. at 10.  It alleges that Defendant SVH is vicariously liable for Defendant Nestle's actions.  *Id*.

Count 6 is brought against all Defendants as a state negligence claim.  *Id*. at 11.  Specifically, Defendants SVH and Rush are alleged to have negligently trained, retained and supervised Defendant Nestle.  Defendant Nestle's own actions are alleged to have constituted negligence.

Count 7 is brought against Defendant Nestle under state law alleging that he intentionally inflicted emotional distress upon Plaintiff. *Id*. at 12. Plaintiff does not allege that any other defendant is vicariously liable under this claim.[1]

Following discovery, Defendants Rush and SVH filed the instant Motion for Summary Judgment on all counts against them. *See doc. 91.*

III. *Legal Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(a) states that federal courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Under this standard, the movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact .") (internal quotation marks omitted).

---

[1] In Defendants' Reply, there is discussion about the claim of intentional infliction of emotional distress as well as a breach of contract claim. *Doc. 115* at 8. Because neither of these claims is brought in Plaintiff's Complaint against Defendant SVH or Rush, the Court sees no need to address these arguments.

4

Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). More particularly, the non-movant must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." *Liberty Lobby*, 477 U.S. at 256; *see also Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("'[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'") (citation omitted).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus*, 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 251 (*quoting Schuylkill & Dauphin Improv. Co. v. Munson*, 81 U.S. 442, 448 (1871)); *Vitkus*, 11 F.3d at

1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  *See Liberty Lobby*, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility.  *See Liberty Lobby*, 477 U.S. at 255.

<u>*Liability Under Section 1983*[2]</u>

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another person of h[er] federal rights." *Howards v. McLaughlin*, 634 F.3d 1131, 1139 (10th Cir. 2011) (citing 42 U.S.C. § 1983). Plaintiff's 1983 claims against Defendant SVH and Rush hinge on their supervision of Defendant Nestle. However, a supervisory relationship alone is insufficient for liability under § 1983 because theories of liability such as respondeat superior or vicarious liability do not apply to § 1983. *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010). Instead, a supervisor can only be held liable on the basis of their own action or inaction. *Id*. One manner in which such liability can be established is "by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*. at 1199. Moreover, the "state of mind required" is "deliberate indifference." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). To be guilty of "deliberate indifference," the defendant must know he is "creating a substantial risk of bodily harm." *Id*. Evidence that establishes that a supervisor "should have known" of a

---

[2] Defendants argue that qualified immunity shields Defendant Rush from suit on Federal claims; they then argue that, because Defendant Rush cannot be sued, Defendant Sierra Vista Hospital, her employer, therefore cannot be sued either. *See doc. 91* at 4-5. Because the Court concludes that Plantiff cannot establish a constitutional violation by Defendant SVH or Rush as a matter of law, a discussion about qualified immunity is unnecessary.

violation is insufficient because "liability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant." *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) (citations omitted)

There are two theories of 1983 liability which have been classified as "exceptions" to the general rule that state officials are not liable for third parties' torts. *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008). The first exception, the "special relationship" doctrine, applies "when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Id.* The second exception, the "danger creation" theory, applies when the State "created the danger that harmed the individual." *Id.*

"A special relationship . . . exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual . . . ." *Johnson v. Holmes*, 455 F.3d 1133, 1142-43 (10th Cir. 2006) (omissions in original). Where an individual is in custody and the state either knows of a danger faced by the individual or "'fail[s] to exercise professional judgment with respect thereto . . . and if an affirmative link to the injuries [the individual] suffered can be shown, then [the state or its employees] violated [P]laintiff['s] constitutional rights.'" *Id.* (quoting *Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 890 (10th Cir. 1992)) (omission in original) (some brackets in original). For such a failure to rise to the level of a due process violation "'requires more than negligence: it requires an abdication of

8

such professional responsibility,' and 'such abdication must be sufficient to shock the conscience.'" *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011) (quoting *Yvonne*, 959 F.2d at 890) (brackets omitted).

In order to meet the danger creation exception, Plaintiff must satisfy a six-prong test. Plaintiff must show that:

> (1) [T]he state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Rost*, 511 F.3d at 1126. Moreover, the actions of the State in creating that risk and subjecting plaintiff to it must arise from "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995).

To establish liability under any of these theories, Plaintiff must show that the actions or inactions of Defendants SVH and/or Rush were significantly beyond negligent. Under standard supervisory liability, it must be "deliberate indifference" -- the defendant must know he is "creating a substantial risk of bodily harm." *Green*, 108 F.3d at 1302. Under the special relationship exception, "it requires an abdication of such professional responsibility,' and 'such abdication must be sufficient to shock the conscience.'" *J.W.*, 647 F.3d at 1011. Under the danger creation exception, the

9

defendants must act recklessly in conscious disregard of an obvious and known risk. *Uhlrig*, 64 F.3d at 573.

Defendants SVH and Rush have met their initial burden of showing that there is an absence of evidence to establish any of these requisite states of mind. Therefore, Plaintiff must set forth specific facts showing that a reasonable jury could find that Defendants SVH and/or Rush acted with one of these states of mind. Plaintiff has failed to do so.

To meet her burden, Plaintiff cites the following facts:

(1) Defendant Nestle's former supervisor believed him to be "evasive in answering questions and defiant to the supervisory process. *Doc. 104*, Ex. 4.

(2) Defendant Nestle was essentially unsupervised.[3] *Doc. 104*, ¶ 7-9 (citing to various places in record).

(3) Defendant Nestle was working beyond the scope of his license, beyond the scope of the drug court contract, and beyond the scope of New Mexico law. *Id.*, Ex. 7.

(4) Defendant Nestle "held the keys to Plaintiff's freedom." *See doc. 104* at 1-2, 9. While this is not expressly explained, the basis appears to be that Defendant Nestle's level of supervision combined with his place in the organization left him as the arbiter of who could stay in the program. *See doc 104* at 5-6 ¶¶ 12-14 (citing Exs. 3, 7).

---

[3] Because there is a genuine dispute presented as to whether Nestle was adequately supervised, the Court approaches the fact in the light most favorable to Plaintiff as non-movant and treats the non-supervision claim as proven. *See Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011).

(5) Plaintiff refers to "significant literature and general awareness" of transference[4] that could lead to situations like that alleged in the instant suit. *Doc. 104* at 8. However, the only support found[5] in Plaintiff's filing for this proposition is Plaintiff's expert report where he says, "Transference is generally thought to occur from the client to the therapist." *Doc. 104*, Ex. 7 at 10. Importantly, the expert report says nothing regarding the prevalence or probability of this phenomenon, let alone the likelihood that a counselor would react inappropriately to the patient's transference.

Even accepting these facts and making all reasonable inferences from them, Plaintiff falls far short of establishing the heightened state of mind requirement under any theory of 1983 supervisory liability. Plaintiff simply fails to establish sufficient knowledge on the part of Defendants SVH or Rush of the risk that Defendant Nestle would enter into an inappropriate relationship with a client. Without such knowledge, Defendant SVH and Rush could not have acted in reckless or conscious disregard of the risk, nor would their actions/inactions shock the conscience. Because Plaintiff has failed to set forth specific facts showing that a reasonable jury could find that Defendants SVH

---

[4] "'Transference,' as applied to a therapist-patient relationship, is the emotional response that the patient has toward the therapist. Under the phenomenon, the patient unconsciously attributes to the therapist those feelings that may have been suppressed toward others close to the patient, such as parents." *State v. Leiding*, 812 P.2d 797, 798 (N.M. Ct. App. 1991). Transference may take the form of "eroticized transference" wherein the patient develops "an intense, vivid, overt, seemingly ego-syntonic demand[ ] for love and sexual fulfillment from the analyst." *In re Sprague*, 564 A.2d 829, 832 (N.H. 1989) (citing H. Blum, *The Concept of Eroticized Transference*, 21 J. of Am. Psychoanalytic Ass'n 63 (1973)).

[5] The Court uses the verb "found" because Plaintiff does not cite to this report as support for his statement about transference.

and/or Rush acted with one of the requisite states of mind, Defendants' Motion for summary judgment as to Count 1 and 2 will be granted.

*Vicarious Liability on State Claims in Counts 4 and 5*

In Counts 4 and 5,[6] Plaintiff alleges that Defendants SVH and Rush are vicariously liable for Defendant Nestle's false imprisonment and assault and battery respectively.

The doctrine of respondeat superior allows a plaintiff to hold "an employer . . . [vicariously] liable for an employee's torts committed with the scope of his or her employment." *Ocana v. Am. Furniture Co.*, 135 N.M. 539, 551 (2004). In New Mexico, "an act is within the 'course of employment' if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interests, or from some impulse of emotion which naturally grew

---

[6] Before addressing the merits of Plaintiff's state causes of action, this Court must always establish that that it has jurisdiction over those claims. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1375-76 (10th Cir. 2011) (noting courts' obligation to examine jurisdiction *sua sponte* where a jurisdictional question exists). For a federal court to have jurisdiction over pendent state law claims, those claims must "derive from a common nucleus of operative fact" and be "so related to the [federal claims] that they form part of the same case and controversy." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), and 28 U.S.C. § 1367(a). Where Federal claims are dismissed, the Court may "on a discretionary basis" exercise jurisdiction over remaining state law claims. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010). Further, the Court must find that all of the pendent claims are "such that [they] would ordinarily be expected" to be tried together. *Gibbs*, 383 U.S. at 725.

Here, the Court clearly continues to possess both the power and the justification to exercise jurisdiction over the remaining state claims. Defendant Nestle remains subject to suit under section 1983 and has not filed a Motion contending otherwise. Undeniably and undisputedly, the events which form the basis of Plaintiff's 1983 claims against him share a "common nucleus of operative fact" and "form part of the same case and controversy" with the remaining state claims against all Defendants.

out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account." *Gonzales v. Sw. Sec. & Protection Agency, Inc.*, 100 N.M. 54, 55 (N.M. Ct. App. 1983) (quotations and citation omitted).

Plaintiff has presented insufficient evidence that Defendant Nestle's inappropriate relationship, or any sexual contact which occurred in that relationship, was "something fairly and naturally incidental" to drug counseling. As noted above, the only "evidence" regarding transference does not support a finding that sexual advances by drug counselor on their clients were particularly likely. Plaintiff does not suggest that Defendant Nestle's alleged actions were done out of some attempt to further the business of SVH or Rush. Plaintiff has failed to rebut Defendants' argument that Nestle's actions resulted from his own independent personal motivations. Therefore, summary judgment for Defendants on the "scope of employment" element would be proper. *See e.g. Ocana*, 135 N.M. at 551-52 ("Intentional torts arising from sexual harassment are generally considered to be outside the scope of employment."); *See also Smith v. U.S. Dep't of Veterans Affairs*, No. 3:07CV40TLS-JCS, 2009 WL 400612, at *3-4 (S.D. Miss. Feb. 13, 2009) (citing assorted state and federal courts with similar "scope of employment" standard ruling that sexual contact with a patient inherently exceeds the scope of a therapist's employment).

13

However, this conclusion does not end the matter of vicarious liability because New Mexico has adopted the "aided-in-agency" exception. *See Ocana*, 135 N.M. at 552. "Under the aided-in-agency theory, an employer may be held liable for the intentional torts of an employee acting outside the scope of his employment if the employee 'was aided in accomplishing the tort by the existence of [an] agency relation.'" *Id.*

While the Court agrees that this "exception should not swallow the rule of limited respondeat superior for intentional torts," a reasonable jury could find the exception applicable to the instant case. *EEOC v. Genesco, Inc.*, No. 09-cv-952 WJ/RHS, 2011 U.S. Dist. LEXIS 62539, at *11 (D.N.M. Apr. 12, 2011). First, Plaintiff's entire relationship with Nestle arose from his position as her drug counselor. *Doc. 104*, Ex. 9. All interactions between the two occurred while she was in drug court and he was her designated drug counselor. *Id.* Second, Defendant SVH designated Nestle as Plaintiff's drug counselor which enabled him to establish a relationship with Plaintiff. *Doc. 104*, Ex. 5 at 3. Third, while he did not have ultimate authority to have her arrested or incarcerated, his input could significantly impact that decision. *See doc. 104*, Ex. 3 at 3 (discussing required notifications of noncompliance). Fourth, the counseling modality used by Nestle was based on creating a strong bond of trust between the patient and counselor. *Doc. 104* Ex. 5 at 5. Fifth, Plaintiff has testified that Nestle actually did use his authority over her as leverage in their relationship:

14

> Q: I need you to tell me about that, please. This was during one of the arguments that you were having? Do you remember what you were arguing about?
> A: We were arguing because of the drug test. It was the day that I got – I was getting jealous about Leah in group, and he was laughing and he was trying to make me jealous. So we went in his office, and he closed the door. And we were yelling at each other, and said – he told me, "You need to do a UA right now." And I was dirty, and he knew it. And I told him I wasn't going to UA, and he said, "Well, I could just have you arrested right now." And we got in a fight, and I started yelling at me. And he said, "I could just tell Sean that you're dirty right now and you could go to jail." And I said, "Well, then I guess I could tell your wife we've been sleeping with each other this whole time." And he just held me against the wall, and he choked me. And then he stopped, and then he kissed me. And then he told me to go back to group. And he said, "We're not going to do nothing like that to each other."

*Doc. 120*, Ex. 2. If a jury accepts Plaintiff's testimony regarding this event, they could reasonably conclude that Nestle was using his authority (or her belief about his authority) to incarcerate her due to her drug use as a weapon in a relationship argument over another woman.

Viewing the facts and making inferences in Plaintiff's favor, it is possible that a reasonable jury could find that Defendant Nestle was substantially aided in committing the alleged misconduct by his position as drug counselor and agent of Defendants. As such, summary judgment cannot be granted as to Defendants' possible vicarious liability under Counts 4 and 5.

*Direct Liability for Negligent Hiring, Retention and Supervision*

In Count 6, Plaintiff alleges that Defendants SVH and Rush are directly liable for negligently hiring, retaining and supervising Defendant Nestle. *Doc. 1* ¶¶ 60-66. Despite these claims being merged into one count, they are separate claims which can have different results in the same case. *See, e.g., Los Ranchitos v. Tierre Grande*, 116 N.M. 222, 228 (N.M. Ct. App. 1993) (upholding trial court's rejection of negligent hiring but reversing rejection of negligent supervision). As such, the Court will review each theory separately.

Regarding negligent hiring and retention, Defendants argue that "Rush and the Hospital must have employed Nestle in a position that would foreseeably create a traceable risk of harm to others because of his hiring. Arrey has no evidence that there was anything that would have indicated Nestle would engage in an improper relationship with her." *Doc. 91* at 8. Coupling this argument with the undisputed facts, the Court finds that Defendants have shown that there is no genuine dispute as to any material fact with respect to liability for negligent hiring or retention. Plaintiff has not even attempted to "set forth specific facts showing that there is a genuine issue for trial" on those theories of negligence. Therefore, Defendants' motion for summary judgment on negligent hiring and retention will be granted.

Regarding the claim of negligent supervision, Defendants' Motion does not appear to explicitly address it. Even if the Motion can be construed as addressing this

16

claim, it fails to show that there is no genuine dispute as to any material fact with respect to liability for negligent supervision.  Moreover, even assuming Defendant had met their summary judgment burden on this claim, Plaintiff, based upon the facts outlined in the above analysis of 1983 liability and aided-in-agency, has "set forth specific facts showing that there is a genuine issue for trial."  Therefore, summary judgment for Defendants on negligent supervision will not be granted.

## *Conclusion*

For these reasons, Defendants' Motion will be granted in part and denied in part. It will be granted on Count 1 (as to Defendants SVH and Rush), Count 2, and Count 6 (as to negligent hiring and retention).  It will be denied on Counts 4 and 5 (as to vicarious liability of Defendants SVH and Rush), and Count 6 (as to negligent supervision).

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent